The parties agreed that the Deputy Commissioner would enter an Interlocutory ruling on the issue of compensability prior to taking medical evidence by deposition. The parties stipulated that plaintiff has been unable to work since "12 [sic] June 1999 and continued to be disabled as of the hearing before the Deputy Commissioner.
Upon review of the competent evidence of record with respect to the errors assigned, the Full Commission finds good grounds to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act at all relevant times.
2. CNA Insurance Company was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The injury sustained by plaintiff is to his back.
5. Plaintiff became totally disabled as a result of his injury of 12 [sic] June 1999, and he continues to be disabled from any work.
6. Plaintiffs average weekly wage was $675.00, which yields a compensation rate of $450.02 per week.
7. Defendants have denied all benefits to plaintiff, contending plaintiff did not sustain a compensable injury. Defendants further contend that plaintiff failed to provide timely notice.
8. The sole issue is whether plaintiff sustained a compensable injury on 7 June 1999.
9. The parties stipulated fifty-one pages of medical and prescription records into evidence.
10. Judicial Notice is taken of the Form 18 Notice of Accident to Employer, the Form19 Employers Report of Injury to Employee, and the Form 61 Denial of Workers Compensation Claim. However, as the Commissions electronic document system did not contain copies of the Forms 18 and 19, defense counsel submitted duplicates via facsimile on 8D ecember 1999.
 ***********
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a thirty-eight year old married male. Plaintiff had completed the tenth grade and had experience in the construction trade and as a heavy equipment operator. He has a history of hypertension, hypercholesterolemia, and sleep apnea. Plaintiff also had back surgeries (lumbar laminectomies) at the L4-5 level in approximately 1989 and 1990 or 1991.
2. Plaintiff was hired by defendant-employer as an equipment operator and supervisor on 18 March 1999. Defendant-employer was under contract with the City of Charlotte to construct storm drains. Marvin Odom was plaintiffs direct supervisor.
3. Plaintiff was working as a foreman and equipment operator on the storm drain job site at Nottingham Drive. Plaintiffs two-man crew consisted of Sylvester Byrd and Charles Hallman.
4. On the morning of 7 June 1999, while operating a backhoe, plaintiff suspected that he had nicked a natural gas line. Plaintiff climbed into the three feet deep catch basin to examine the line. Plaintiff radioed Mr. Odom and advised him that the gas line had been damaged. When plaintiff began to climb out of the catch basin, his foot slipped on the loose stone and gravel bank. As plaintiff fell, he twisted his body and felt pain in his lower back radiating down his right leg.
5. At the time of plaintiffs incident, Mr. Hallman was operating a tractor across the street from where plaintiff was working. Although Mr. Hallman could observe plaintiff from his position on the tractor, he did not see plaintiff fall or slip in the catch basin. Mr. Byrd also reported that he did not see plaintiff fall at work on 7 June 1999.
6. On 8 June 1999 at approximately 5:00 a.m., plaintiff called Mr. Odom and reported that he was going to the emergency room for back pain. Mr. Odom instructed plaintiff to contact the company secretary for healthcare information. Plaintiff spoke with the company secretary, Phyllis, and explained that he had injured his back at work and needed to seek medical treatment.
7. On 8 June 1999, plaintiff sought medical treatment at Carolinas Health Care System Emergency Department, where he was examined by Kirsten Gross, M.D. Plaintiff reported right hip pain that began after he slipped and twisted his body while climbing out of a hole on 7 June 1999. Plaintiff indicated that four hours after he slipped in the catch basin, he experienced an onset of anterior and lateral pain. He also complained of anterior inguinal pain. Plaintiff was diagnosed with a right hip strain and elevated blood pressure. Dr. Gross recommended plaintiff apply ice, massage and stretch, and then add heat to the hip after two days. Plaintiff received crutches as needed for comfort and was advised to follow-up with an orthopaedist if the hip was no better in seven days. Plaintiff was excused from work for two days and instructed to not do any heavy work for four days.
8. Plaintiff returned to work on 10 June 1999, and he presented Mr. Odom with the out-of-work note from Dr. Gross. However, plaintiff did not submit a daily report to Mr. Odom for the week of 4 June 1996 through 9 June 1999.
9. Plaintiff prepared a Form 18 Notice of Accident to Employer, dated 9 June 1999, and filed with the Commission on 23 June 1999. On the Form 18, plaintiff indicated that, "while stepping out of catch basin trench to check gas line, my leg slipped causing my leg (rt) to twist as I caught myself from falling. Felt rt. hip area pop. Injury is HNP-Disc rupture and groin ligament pull (Corkscrew injury) per MD. Plaintiff returned to the emergency department at Carolinas HealthCare System on 11 June 1999. The treating physician noted that plaintiff was diagnosed with a "cork screw twist right groin injury when he was seen in the emergency department on 8 June 1999. Plaintiff was examined at Miller Orthopaedic Clinic by Lowell H. Gill, M.D., on 14 June 1999. At this visit, Dr. Gill diagnosed plaintiff with "HNP-disc rupture. The medical terminology used on the Form 18 by plaintiff is consistent with the medical notes from plaintiffs 11 June 1999 emergency department visit and his 14 June 1999 appointment with Dr. Gill.
10. On 11 June 1999, plaintiff was directed to report to the Rock Hill, South Carolina, office by Mr. Odom. At the Rock Hill office, plaintiff spoke with Mr. Odom by telephone. Mr.Odom informed plaintiff that he was being terminated because the Nottingham Drive contract was not working out. Defendant-employer offered plaintiff a position as a machine operator at another job site. Plaintiff never returned to work for defendant-employer.
11. On 11 June 1999, plaintiff returned to the emergency department, where he was seen for right groin pain. Plaintiff reported a history of prior back surgery approximately twelve years ago. X-rays of the right pelvis showed a possible narrowing of disc space at L4-5 and calcification at the right pelvis which was probable phlebolith, or stone. Plaintiff was instructed to rest, alternate applying heat and cold, and to remain out of work through 13 June 1999.
12. On 27 June 1999, plaintiff returned to the emergency department with complaints of transient bladder incontinence. He also reported back pain from his herniated disc and a recent exacerbation of symptoms, including pain radiating into the right hip.
13. On 28 June 1999, plaintiff underwent an MRI of the lumbar spine. The MRI revealed a disc bulge and spinal stenosis at L3-4 and at L4-5 a left posterior paramedian herniated nucleus pulposus.
14. On 10 August 1999, Jerry M. Petty, M.D., of Carolina Neurosurgery 
Spine Associates examined plaintiff. Plaintiff reported slipping and twisting as he was climbing out of a hole. Plaintiff explained that when he landed, he had pain in his back and especially off to the left side into his right hip. Dr. Petty ordered a myelogram and CT scan after he was unable to locate the lesion due to plaintiffs inconsistent symptomatology as it correlated to the physical exam. A myelogram/CT scan revealed fairly marked spinal stenosis and a questionable recurrence of the disc herniation, as it was on the left side, which was the opposite side of plaintiffs pain. Dr. Petty requested that Domagoj Coric, M.D., review plaintiffs case.
15. On 25 August 1999, Dr. Coric evaluated plaintiff. Plaintiff stated that he slipped and fell approximately four feet while climbing at work. He reported right leg cramping pain down the outside of the leg to the foot, low back aching, left leg pain radiating to the knee, and numbness in the lateral aspect of the right calf and foot.
16. Plaintiff first sought medical treatment for his back injury on 8 June 1999. At that time, he reported a work-related injury to the medical personnel at the hospital. Plaintiff has described the same work-related injury to various treating physicians. Plaintiff was terminated from his job three days after he reported his fall at work and after he sought medical treatment. The Full Commission finds that plaintiffs testimony regarding the specific incident leading to his back condition is credible. Plaintiff sustained a back injury on 7 June 1999 as a direct result of a slip and fall incident.
17. Defendant-employer had notice of plaintiffs fall immediately after the incident and had notice of plaintiffs claim of injury resulting from the fall by 8 June 1999.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 7 June 1996, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. G.S.97-2(6).
2. Defendants had immediate notice of plaintiffs accident of 7 June 1999. Therefore, plaintiff has complied with the provisions of G.S. 97-22.
3. Pursuant to the stipulations of the parties, plaintiff has been totally disabled as a result of his injury. Plaintiff is entitled to total disability compensation benefits at the rate of $450.02 per week beginning 11 June 1999 and continuing until further order of the Commission. G.S. 97-30.
4. Plaintiff is entitled to have defendants pay for all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury for so long as such examinations, evaluations, and treatments are reasonably required to effect a cure, give relief, or lessen plaintiffs period of disability. G.S. 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the award of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay plaintiff total disability compensation benefits at the rate of $450.02 per week beginning 11 June 1999 and continuing until further order of the Commission. Any accrued amount shall be paid to plaintiff in a lump sum, subject to a reasonable attorneys fee approved in Paragraph 3 of this Award.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his back injury for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, give relief, or tends to lessen plaintiffs period of disability.
3. A reasonable attorneys fee of twenty-five percent of the compensation due plaintiff under this Award is approved for plaintiffs counsel and shall be paid as follows: twenty-five percent of the accrued amount due plaintiff shall be deducted and paid directly to plaintiffs counsel. Thereafter, plaintiffs counsel shall receive every fourth compensation check.
4. Defendants shall pay the costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ LAURA K. MAVRETIC COMMISSIONER